COOK-REYNOLDS CO., Respondent, *v.* CHIPMAN, Appellant.

(No. 3,240.)

(Submitted March 22, 1913. Decided May 2, 1913.)

[133 Pac. 694.]

*Real Property—Sales—Breach of Contract—Advance Payments —Forfeiture —Equity—Cancellation —Rescission —Interest— Special Damages—Pleading.*

Contracts of Sale—Breach by Buyer—Advance Payments—Forfeiture.
1. In the absence of an equitable showing, a defaulting purchaser of property is not entitled to a return of any advance payments made by him, even though there is no provision in the contract of sale for liquidated damages in case of default.

Same—Time of Essence of Contract—Applicability of Principle.
2. Whether time is or is not of the essence of a contract of sale is material to the application of the rule stated in paragraph 1, *supra,* only where the defaulting party has, after expiration of the time limit, made a tender, with a refusal of acceptance by the seller; hence where no such tender was made but the buyer expressly pleaded his inability to meet his obligations, the question of time became immaterial.

Same—Forfeitures—Statute—Applicability.
3. Where, under a contract of sale of property (real and personal), cancellation of which, with forfeiture of an advance payment, was sought because of breach by the vendee in failing to make a deferred payment, the legal title remained in the vendor though possession was delivered to the vendee, section 5800, Revised Codes, providing for a vendor's lien, has no application, and therefore the provision of section 5715, declaring void, "contracts for the forfeiture of property subject to a lien," etc., *held* not to have any pertinency.

Same—Rescission—Cancellation—Placing Defendant in *Statu Quo*—Inapplicability of Principle.
4. *Held,* that the rule requiring the vendor who comes into a court of equity seeking the rescission of a contract of sale, to return to the vendee all moneys paid on the purchase price in excess of an amount sufficient to compensate plaintiff in damages, has no necessary application in an action upon the contract to cancel it for a breach by the vendee.

Same—Forfeiture—Relief from—Evidence.
5. Evidence *held* to show that defendant vendee's breach of duty, under a contract of sale of land and personalty, in failing to meet a deferred payment on the due date was not so grossly negligent, willful or fraudulent, as to deny him relief under section 6039, Revised Codes, from forfeiture of an advance payment of $5,000 as provided in the contract, where it appeared that the value of the property had not diminished during defendant's occupancy, that the value of its use was much less than the advance payment made by him, and that damages by way of compensation could easily be arrived at.

Same—Forfeiture—Erroneous Decree—Interest.
    6.  A cause of action to recover unpaid interest on a note (with attorney's fees for collecting same), the principal of which was erroneously decreed forfeited to plaintiff, falls with the forfeiture.

Same—Special Damages—Pleading.
    7.  Special damages due to defendant's withholding property sought to be regained by the seller because of breach of contract by the former, not having been specially pleaded, were improperly awarded.

*Appeal from the District Court, Fergus County; E. K. Cheadle, Judge.*

ACTION by the Cook-Reynolds Company against L. H. Chipman. Judgment for plaintiff. Defendant appeals from the judgment and an order denying his motion for a new trial. Reversed and remanded.

*Mr. Edward C. Russell,* and *Mr. J. C. Huntoon,* for Appellant, submitted a brief; *Mr. Russell* argued the cause orally.

The contract in question here was practically an executed one, with certain conditions subsequent, as to payments on the balance of the purchase price and is so regarded in equity. The vendee is regarded as the owner of the equitable title, while the vendor holds the legal title in trust for the purchaser and has a lien for the purchase price. (Boone on Real Property, 3372; *Bodley* v. *Ferguson,* 30 Cal. 511; *Miles* v. *Hemenway,* 59 Or. 318, 111 Pac. 696, 117 Pac. 273; *Collins* v. *Creason,* 55 Or. 524, 106 Pac. 445.) Keeping these facts in mind, we will seek to apply the statutes and the reasoning of decided cases to the case at bar.

The freedom of contract is limited by the law as it stands at the date of execution (Rev. Codes, sec. 5054), which is read into the contract and controls or overrides its provisions. Allegations must be made and proof offered by a plaintiff seeking to bring his case within the exception of section 5055. (*Deuninck* v. *West Gallatin Irr. Co.,* 28 Mont. 255, 262, 72 Pac. 618.) No such allegations or proof were made in this case. Under section 5054 the provision of the contract as to forfeited payments as liquidated damages was void. (*Deuninck* v. *West Gallatin Irr. Co., supra; Long Beach* v. *Dodge,* 135 Cal. 401, 67 Pac.

499; *Drew* v. *Pedlar,* 87 Cal. 442, 22 Am. St. Rep. 257, 25 Pac. 749; *Phelps* v. *Brown,* 95 Cal. 572, 30 Pac. 774; *Easton* v. *Cressey,* 100 Cal. 75, 34 Pac. 622.) Forfeiture as liquidated damages would then be error. Forfeitures are not looked upon with favor by our legislatures or by the courts. Section 4906 reads: "A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created." (*Reclamation Dist.* v. *Sels,* 145 Cal. 181, 78 Pac. 638; Washburn on Real Property, 447.)

Furthermore, under sections 5800 and 5715, a forfeiture under the circumstances here presented is forbidden, for if the parties do not mutually abandon or rescind the contract, the vendor can foreclose his vendor's lien for the money due and thus close out the equity of the purchaser in the land. Having this lien, he is prohibited from forcing a condition, providing for a forfeiture of the buyer's interest in the land, which the latter's payments have purchased. It is further seen that this foreclosure of the interest of the buyer must be subject to redemption by him, and that a decree cutting off any and all equity of redemption is against the spirit of the statute. In Oregon, without such a statute, this is held to be the only course in equity. (*Miles* v. *Hemenway,* 59 Or. 318, 111 Pac. 696, 117 Pac. 273; *Sievers* v. *Brown,* 34 Or. 454, 45 L. R. A. 642, 56 Pac. 171.)

The district court should have relieved appellant under section 6039. The appellant, by returning the real and personal property and offering full payment for the use of the property, certainly offered full compensation in accordance with the terms of this section. While it does not declare the forfeiture clause of the contract void, as do sections 5054 and 5715, it sets forth the rule of equity, to which the appellant appealed in his answer. If it be held, however, that the forfeiture clause, despite the statutes, was originally in effect, the respondent waived it by the frequent extensions of the payment due February 1, 1911. (*Graham* v. *Merchant,* 43 Or. 294, 72 Pac. 1088; *Eby* v. *Larkin,* 53 Wash. 454, 102 Pac. 236; *King* v. *Seebeck,* 20 Idaho, 223, 118 Pac. 292.) The return of the purchase money to a vendee in default was ordered in *Jackson* v. *McGinness,* 14

Pa. 331, and *State* v. *Hackley,* 124 La. 854, 50 South. 772.   The respondent, by its action having elected to rescind, the court should have compelled it to do equity, as requested by appellant, and in not doing so erred.

Moreover, it should have decreed a period of redemption, such being provided for in section 5715 and by the rules of equity. (*Keller* v. *Lewis,* 53 Cal. 113; *Fairchild* v. *Mullan,* 90 Cal. 190, 27 Pac. 201; *Miles* v. *Hemenway,* 59 Or. 318, 111 Pac. 696, 117 Pac. 273; *Higginbotham* v. *Frock,* 48 Or. 129, 120 Am. St. Rep. 796, 83 Pac. 536.)   The failure of respondent to redeliver appellant's note at the time of his demand for possession waived his right of forfeiture.   (*Miles* v. *Hemenway, supra; Comstock* v. *Brosseau,* 65 Ill. 39.)

*Messrs. Belden & De Kalb* submitted a brief in behalf of Respondent; *Mr. O. W. Belden* argued the cause orally.

There are only three instances known to the law where the right of a vendee to the return of any part of the purchase money is recognized: 1. Where the vendor refuses to comply with his contract to convey.   2. Where the vendor cannot convey such title as he agreed to convey.   3. Where there has been a mutual rescission of the contract.   (*Glock* v. *Howard & Wilson Col. Co.,* 123 Cal. 1, 69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713.)

Sections 5054 and 5715 of the Revised Codes have no application whatever to a case of this kind.   This is not a foreclosure suit, nor is the property involved subject to any lien. (*Avery* v. *Clark,* 87 Cal. 619, 22 Am. St. Rep. 272, 25 Pac. 919.) It is recognized everywhere that when a vendee defaults in payments or fails to comply with the conditions of an executory contract, he thereby loses, not necessarily as damages, or necessarily as a forfeiture, as the term is understood, but in any event loses, the moneys he may have paid to the vendor.   (2 Sutherland on Damages, 3d ed., sec. 585; *Bradford* v. *Parkhurst,* 96 Cal. 102, 31 Am. St. Rep. 189, 30 Pac. 1106; *Joyce* v. *Shafer,* 97 Cal. 335, 32 Pac. 320; *Garberino* v. *Roberts,* 109 Cal. 125, 41 Pac. 857; *Patterson* v. *Murphy,* 41 Neb. 818, 60 N. W. 1; *White-*

*man* v. *Perkins,* 56 Neb. 181, 76 N. W. 547; *Estes* v. *Browning,* 11 Tex. 237, 60 Am. Dec. 238; *Southern Pac. Ry. Co.* v. *Allen,* 112 Cal. 455, 44 Pac. 796; *Stratton* v. *California Land etc. Co.,* 86 Cal. 353, 24 Pac. 1065; *Rayfield* v. *Van Meter,* 120 Cal. 416, 52 Pac. 666; *Hansbrough* v. *Peck,* 5 Wall. (U. S.) 497, 18 L. Ed. 520.) The rule is not a rule of damages, and in its application does not result in a forfeiture in the sense in which that term is recognized in law, but is the inevitable result of a failure to comply with the terms of a contract solemnly entered into. It is immaterial to the right of respondent to retain the moneys paid that any portion of the alleged forfeiture clause be contained in the contract.

Section 5800, Revised Codes, is a section applying to executed contracts, and there is no such thing known as a vendor's lien where the contract is executory as in this case. California has the same code section (sec. 3046, Cal. Civ. Code), and the court there has frequently construed the section as not applying to cases of this kind. (*Avery* v. *Clark,* 87 Cal. 619, 22 Am. St. Rep. 272, 25 Pac. 919; *Kent* v. *Williams,* 114 Cal. 537, 46 Pac. 462; *Longmaid* v. *Coulter,* 123 Cal. 208, 55 Pac. 791.) Consequently the provisions of section 5715 do not apply to the case at bar. What is said about the vendor having the right to foreclose a vendor's lien in appellant's brief is, therefore, incorrect; nor is there any such thing in the state of Montana as a period of redemption in cases like this such as exists in Oregon and which is said to be sustained by the Oregon cases cited.

Appellant contends that should the forfeiture clause be effective, the respondent was estopped from enforcing it by the assurance alleged to have been given the appellant. But relief against a forfeiture will not be granted on the ground that several extensions of time have been made, and that improvements have been made on the strength of a waiver of the strict terms of the contract, where the conditions on which the extensions were granted had not been performed, and no tender of the sum in default. (See *Boulder etc. Placer Co.* v. *Maxwell,* 24 Colo. 87, 48 Pac. 815; *Hansbrough* v. *Peck, supra.*)

The commencing of an action is not an election to rescind. (*Aikman* v. *Sanborn,* 5 Cal. Unrep. 961, 52 Pac. 729; *Southern Pacific Ry. Co.* v. *Allen,* 112 Cal. 455, 44 Pac. 796.)

MR. JUSTICE SANNER delivered the opinion of the court.

On June 17, 1910, the parties to this action entered into a written agreement for the sale by respondent—plaintiff below— and the purchase by appellant—defendant below—of certain real and personal property situate in Fergus county. Montana. The purchase price as fixed by the agreement was $29,605, payable, with interest, as follows: $5,000 at the execution of the contract; $5,819 on or before February 1, 1911; $9,786 on or before December 1, 1911; $1,000 on or before December 1, 1912; $1,000 on or before December 1, 1913; and $7,000 on or before December 1, 1914. It was further provided in the agreement that the purchaser should pay all taxes thereafter accruing; that when the purchaser should make the payment of $9,786 due December 1, 1911, he should be entitled to a warranty deed of the lands, giving back to the seller a mortgage or mortgages to secure the balance of the unpaid purchase price; that "in case of the failure of the said purchaser to make either of the payments or interest thereon, or any part thereof, or to perform any of the covenants on his part hereby made and entered into, then the whole of said payments and interest shall become immediately due and payable and this contract shall, at the option of the seller, be forfeited and determined, * * * and the said purchaser shall forfeit all payments made by him on this contract, and all his right, title and interest in all buildings, fences or other improvements whatsoever, and such payments and improvements shall be retained by the said seller in full satisfaction and in liquidation of all damages by them sustained, and they shall have the right to re-enter and take possession of the premises aforesaid; and the purchaser shall redeliver to the seller the personal property hereinbefore enumerated, or the value thereof."

The amended complaint is in two causes of action. The first cause of action alleges that defendant defaulted in the payment

due February 1, 1911; that plaintiff after such default made demand upon defendant for the surrender of the property, both real and personal, which was refused; that plaintiff is the owner and entitled to the immediate possession of all said property; and that it is unlawfully withheld, to plaintiff's damage in the sum of $5,000. The plaintiff's theory of its rights is set forth in the following allegation: "That by reason of the acts complained of on the part of the defendant, and defendant's failure to keep and perform the said contract, a copy of which is hereto attached, at the time and in the manner therein specified, under and by virtue of the terms thereof, defendant has abandoned and forfeited all his right under said contract, together with the right of possession of said premises in said contract described, and to the right of the possession of the personal property therein enumerated, which plaintiff has demanded of defendant that he quit and surrender up to this plaintiff."

The second cause of action is for interest, and attorneys' fees for collecting the same, upon a promissory note for $3,000 given as part of the first payment, the principal having been paid.

The prayer contains no specific demand for damages, but asks, among other things: "That the said contract be declared to be ended and determined, and all rights of the said defendant L. H. Chipman thereunder, together with all payments made thereon, be forfeited according to the terms of said contract," and "that plaintiff have such other and further relief in the premises as * * * may seem meet and agreeable to equity."

The answer admits default in the payment due February 1, 1911; denies that the plaintiff is the owner or entitled to the immediate possession of the property, or that he, the defendant, unlawfully withholds the same, or that plaintiff is damaged by such withholding, or that plaintiff ever made demand for possession of the same prior to the commencement of the action, and alleges that he, the defendant, made an offer to restore the property to the plaintiff upon the condition that the plaintiff return to him the $5,000 paid down on the contract, "less a reasonable amount to be allowed to the plaintiff for the use of said property, for the time defendant was in possession thereof," which

offer the plaintiff ignored; that he, defendant, has an equity in said real estate, and is the owner of said personal property, and is entitled to withhold possession of both until the sum of $5,000 paid down by him is returned, with interest "less a reasonable sum for the use of such property from the 17th day of June, 1910, until the same is restored to the possession of plaintiff." By way of affirmative defense an estoppel is attempted, and there is also a counterclaim pleaded for the return of the first payment of $5,000, with interest, and for the return of $143.58 taxes paid, with interest, less a reasonable sum for the use of the property. The defendant's prayer is specific, but concludes with a demand for such other relief as may be just and equitable.

The findings and conclusions of law by the trial court were in favor of the plaintiff, and judgment was entered accordingly. In the judgment was included an award of "$870 damages incurred by the plaintiff by reason of the refusal of defendant to deliver possession of said premises and property on the 11th day of July, 1911," and a decree that all right, claim and interest of the defendant in and to the property involved "is ended and determined, and all payments made thereon are adjudged and decreed to be forfeited to the plaintiff."

The principal contention is that the trial court erred in decreeing the defendant's payments forfeited, and in decreeing the return of the property involved "without imposing the condition that the plaintiff return to the defendant the payments made by him, less a reasonable rental for the use of the property and any damages suffered by the plaintiff by reason of the breach of contract." As we understand the argument of appellant, it is: that the provision of the contract above quoted, being a stipulation for liquidated damages, is void; that time was not of the essence of the contract, hence there was no basis for a forfeiture; that a forfeiture was precluded because the property was subject to a vendor's lien; that the appellant was entitled to be relieved from the forfeiture of his payments in view of his offer to make full compensation; that the respondent was estopped by its conduct in the premises from claiming a forfeiture; that this suit is based upon an election of respondent

to rescind, and having appealed to equity to vindicate its action, equity forbids that it retain more of appellant's payments than will suffice to recoup its damage.

1. Whether the provision of the contract above quoted is [1] a stipulation for liquidated damages, and whether, as such, it is within the inhibition of section 5054, Revised Codes, we need not inquire. Even if it be so, this fact would not of itself require that in every, or in any, case the defaulting purchaser should have a return of the moneys paid by him; on the contrary, its effect is to leave the parties where they would be if no such stipulation had been made (*Bennett Bros. Co.* v. *Tam,* 24 Mont. 457, 468, 62 Pac. 780; *Glock* v. *Howard & Wilson Colony Co.,* 123 Cal. 1, 69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713; *List* v. *Moore* (Cal. App.) 129 Pac. 962; *Edgerton* v. *Peckham,* 11 Paige Ch. (N. Y.) 352); and it is settled that without such a stipulation the defaulting purchaser is not, in the absence of an equitable showing, entitled to a return of any part of the moneys paid. (*Perkins* v. *Allnut,* 47 Mont. 13, 130 Pac. 1; *Clifton* v. *Willson, post,* p. 305, 132 Pac. 424; *Hansbrough* v. *Peck,* 5 Wall. (U. S.) 497, 18 L. Ed. 520; *List* v. *Moore, supra; Glock* v. *Howard & Wilson Colony Co., supra.*)

2. But it is urged that neither the principle last stated, nor the stipulation itself could be a proper basis of the court's de- [2] cree, because time was not expressly made as of the essence of the contract. Whether time is or is not of the essence of the contract is material to the application of the above rule only where there has been a tender or offer of performance by the party in apparent default, with a refusal of acceptance by the other. Here the appellant not only has made no such tender or offer, but expressly pleads his inability to perform. The situation thus presented is in effect the same as though time had been expressly made as of the essence of the contract.

3. Nor can we sustain the contention that forfeiture was precluded in this case because of the following provisions of the [3] Revised Codes: "All contracts for the forfeiture of property subject to a lien, in satisfaction of the obligation secured thereby, and all contracts in restraint of the right of redemption

from a lien, are void" (sec. 5715); and: "One who sells real property has a vendor's lien thereon, independent of possession, for so much of the price as remains unpaid and unsecured, otherwise than by the personal obligation of the buyer." (Sec. 5800.) Neither section is pertinent. By the argument the application of section 5715 is made to depend upon the existence of a vendor's lien under section 5800. We think that section does not apply where the legal title is retained by the vendor. As an expression of our views we quote from Professor Pomeroy as follows: "It has been said, in English and American decisions, that the vendor's lien may arise before conveyance as well as after; and the interest or right of the vendor under an ordinary contract for the sale of land * * * has been called a vendor's lien, and treated in the same manner as the equitable lien arising in favor of the grantor upon an actual conveyance of the land where the purchase price in whole or in part is left unpaid. This is an unnecessary and an incorrect use of terms; it confounds legal notions which are essentially different. There is a plain distinction between the lien of the grantor after a conveyance, and the interest of the vendor before conveyance. The former is not a legal estate, but is a mere equitable charge on the land. * * * In the latter, although possession may have been delivered to the vendee, and * * * the vendee may have acquired an equitable estate, yet the vendor retains the legal title, and the vendee cannot prejudice that legal title, or do anything by which it shall be devested, except * * * by paying the price according to the terms of the contract. To call this complete legal title a lien is certainly a misnomer. In case of a conveyance, the grantor has a lien, but no title. In case of a contract for sale before conveyance, the vendor has the legal title, and has no need of any lien." (3 Pomeroy's Equity Jurisprudence, sec. 1260.) Where it appears that the intention of the parties was in fact to create the relationship of mortgagor and mortgagee, title being retained with the idea it should operate as a mortgage, there might indeed be occasion to apply the provision of section 5715, but that position is not, and could not well be, taken here, because the contract will bear

no such construction (*Arnold* v. *Fraser,* 43 Mont. 540, 117 Pac. 1064), and because it is not the forfeiture of the property to which a vendor's lien might, under proper circumstances, attach that is complained of, but the forfeiture of the money paid thereon. Of course, if there is no lien within the meaning of section 5800, there can be no basis for denying a forfeiture upon this ground or for complaint because a period of redemption was not provided in the decree.

4. In the brief of appellant we find a vigorous discussion of the proposition that since the respondent "has come into a [4] court of equity asking its aid to rescind the contract," equity commands the return to appellant of all of the purchase money paid in excess of an amount sufficient to compensate the respondent in damages. Granting the premise, the conclusion is inevitable; but although the suit is in equity it is not an action to rescind or to judicially vindicate a rescission. The respondent is standing upon the contract seeking a cancellation of it because of appellant's breach. It is quite true that in *Arnold* v. *Fraser, supra,* an action similar to this was tried on the theory that the vendor should have returned or offered to return the purchase money paid, less the value of the use of the property, and that that case was affirmed on appeal; but in the opinion the correctness of this theory was questioned, it being expressly stated that this court would determine the case as made without dissent by anyone in the court below, reserving the question itself for future treatment. We are now convinced that that case was, and the present case is, of the character referred to in *Clark* v. *American D. & M. Co.,* 28 Mont. 468, 476, 72 Pac. 978, wherein it is said: "There is a wide difference between the rescission of a contract and its mere termination or cancellation. 'It is well settled that a technical rescission of the contract has the legal effect of entitling each of the parties to be restored to the condition in which he was before the contract was made, so far as that is possible, and that no rights accrue to either by force of the terms of the contract. But, besides technical rescission, there is a mode of abandoning a contract as a live and enforceable obligation which still entitles the party declaring its abandonment

to look to the contract to determine the compensation he may be entitled to under its terms for the breach which gave him the right of abandonment.' (*Hayes* v. *City of Nashville,* 80 Fed. 641, 26 C. C. A. 59.) 'Such an abandonment is not technically a rescission of the contract, but is merely an acceptance of the situation which the wrongdoing of the other party has brought about.' (*Anvil Min. Co.* v. *Humble,* 135 U. S. 540, 14 Sup. Ct. Rep. 876, 38 L. Ed. 814, 18 Morr. Min. Rep. 98.)'' The consequence of this is that the rule of equity invoked by appellant has no necessary application to an action upon the contract to cancel it for a breach, and that in such an action the remedies afforded by the contract will be enforced unless they impinge upon other rules of equity or law.

5. This brings us to the consideration of the question of appellant's rights under the affirmative pleas of the answer and in virtue of the provisions of section 6039, Revised Codes. That [5] section provides: ''Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful or fraudulent breach of duty.'' There is some contention by respondent to the effect that this statute is not intended to apply to a case of this nature; but if it does not, we are at a loss to understand where it might better apply. If, as a matter of fact, the actual damages sustained by the vendor in this case are less in amount than the moneys paid by the purchaser, and if, under the principles above stated, the vendor can retain the excess, then most assuredly the purchaser will have incurred a loss in the nature of a forfeiture authorized by the terms of the contract, by reason of his failure to comply with the same. From such a loss he may be relieved upon a showing that he is equitably entitled to such relief, if his breach of duty was not grossly negligent, willful or fraudulent. As mentioned above, the appellant made an affirmative plea by way of estoppel which, whether defective as such or not, must, under the prayer for general relief, be noticed as a statement

in part of his equities in the matter. From this and other portions of his answer it is made to appear that immediately after making the contract the appellant became fearful that he would not be able to comply strictly with its terms, and was re-assured and encouraged by the respondent's officers to the effect that he would not suffer damage at its hands if he would continue and endeavor to comply with its terms; that, relying on such assurances, he did in good faith endeavor to comply with the terms of the contract, and in doing so expended large sums of money and gave more than a year of his time and labor in attempting to carry out its terms and would be damaged to the amount of many thousands of dollars by the enforcement of the strict terms of the forfeiture; that respondent by its officers frequently waived the strict performance of the contract as to terms of payment, extending the time of the payment due February 1, 1911; and that on July 11, 1911, the appellant, finding himself unable to meet the payments, submitted the proposition to return the property as hereinabove referred to; that the property can be returned undiminished in value; that the value of its use is $500, and that appellant stands willing to have the property returned and to have full compensation made to respondent for the use of the property and for any damages sustained by respondent on account of his breach of the contract.

The evidence touching some of these allegations is conflicting, and, of course, the findings of the court as to them may not be disturbed; but as to others it is undisputed. For instance: the appellant testified to three distinct conversations with Mr. Reynolds, the president of the company, all before the payment of the $3,000 note which was given as part of the first payment. Concerning the first conversation held about August 8, 1910, the appellant says: "We came down and told him we saw we were not able to go through with the payments, couldn't sell our ranch in the east, times had tightened up so, and we wished they would take it back, and he said: 'Mr. Chipman, you go out there and show good intentions; we will see you through with this. We will see that you don't lose any money.' " This conversation was in the presence of appellant's son who cor-

roborates his father concerning it. About a week after this, the second conversation occurred, as follows: "I came down then in about a week again, after some stuff, and I went in and I says: 'I wish you would take this ranch back.' And he said: 'Well, now, don't be faint-hearted. You go out there and we will see that you don't lose anything.' I says, 'Do you think you could sell this ranch?' and he says, 'Why, yes, I think we could.' So I listed it with them for sale." The appellant's wife, being dissatisfied, went with him to the respondent's office, still in August, 1910, and there found Mr. Reynolds, and the third conversation occurred in her presence, which she renders as follows: "We visited Mr. Reynolds in reference to going out on the place; we were a little afraid we would not be able to make the payments and he wanted to know what we wanted to do, and I told him—he asked me what I wanted to do—he wanted to know if we wanted to go out in September and try it. I told him we would if we would be able to make the payments. 'Well,' he said, 'we have never foreclosed on anyone yet, and we won't begin on you people.' " There is not in the record any semblance of contradiction of this testimony; and the finding of the jury that no such assurances were given is without any foundation whatever. After these conversations the appellant went on the land and paid the note, and concerning that matter he says: "If Mr. Reynolds had not made us these promises we would have throwed it up right then when we had $2,000 paid on it"; instead of that he estimates his detriment by going ahead at $8,000. The appellant also testified that he had tried to sell his Iowa land to raise the money for the payments but was unable to do so, and he sought to show in detail and as evidence of his good faith, the particular efforts he had made to meet the terms of the contract, but in this he was checked by the trial court.

We think the evidence as a whole shows that the appellant's breach of duty was not grossly negligent, willful or fraudulent, and that it was entirely practical and not difficult to ascertain the damages of respondent on principles of compensation in accordance with the provisions of the statute. In these circum-

stances, appellant was in position to ask relief from the forfeiture of his payments in excess of respondent's damage, and that relief should in this case have been granted to him because of the conduct of respondent toward him and its effect upon him as detailed above. We subjoin a few authorities which lend support to these views: *Barnes* v. *Clement,* 12 S. D. 270, 81 N. W. 301; *Cue* v. *Johnson,* 73 Kan. 558, 85 Pac. 598; *Parsons* v. *Smilie,* 97 Cal. 647, 32 Pac. 702; *Sherburne* v. *Hirst,* 121 Fed. 998; *Boulder & Beaver Placer Co.* v. *Maxwell,* 24 Colo. 87, 92, 48 Pac. 815; 1 Pomeroy's Equity Jurisprudence, secs. 432–460; 16 Cyc. 79, sec. 6, p. 80, sec. C.

6. If, as we have held, the appellant should have been [6] relieved from the forfeiture of his payments in excess of respondent's damages, it necessarily follows that the findings and judgment relative to the second cause of action cannot be upheld. Seeking, as it did, the unpaid interest (with attorney's fees for collecting the same) of the $3,000 note given as part of the first payment, the principal of which was paid, it was a mere incident to the main transaction, and upon the case presented, it necessarily falls with the forfeiture.

7. In addition to the forfeiture of all appellant's payments without regard to the amount of respondent's damage, the judgment also awards the respondent the sum of $870 damages for [7] withholding the property after demand. Counsel for respondent addressing the trial court, stated his position concerning this matter to be that, had appellant surrendered possession after the breach, respondent would be entitled only to the payments made as liquidated damages for the breach, "but we claim that under the law and under the contract we are entitled to an additional damage by reason of having to maintain this action for the purpose of getting possession after the breach." This is a clear claim for special damages of a particular character, which, if recoverable in this sort of action at all, must be supported by specific allegations in the pleadings (*Gordon* v. *Northern Pacific Ry. Co.,* 39 Mont. 571, 18 Ann. Cas. 583, 104 Pac. 679; *O'Brien* v. *Quinn,* 35 Mont. 441, 90 Pac. 166; *Root* v. *Butte, A. & P. Ry. Co.,* 20 Mont. 354, 51 Pac. 155),

and no such allegations appear. Moreover, the evidence does not show any special damage due to withholding the property after demand. The jury found that the value of the real estate had not been diminished, and that the value of the use for the whole period from June 17, 1910, to the date of trial was $2,610; this being much less than the appellant's payments, there was no basis in fact for the award of $870 over and above the forfeiture, and the judgment must be disaffirmed as to that.

8. It was possible for the trial court to adjust the equities of the parties as presented at the time of the trial, and this court should do likewise, so far as it can, to the end that the litigation may have a speedy close. Rejecting, then, the items of $870, damage for withholding after demand; rejecting also the allowance for interest and attorneys' fees upon the second cause of action, and taking into account the moneys paid by appellant, with interest at the legal rate since such payment, on the one hand, and on the other, $2,610, the value of the use of the property, and $362.45, damage from personal property depreciated or not returned, we determine the difference in appellant's favor to have been $2,706.40; and this amount the judgment should have provided that appellant recover from respondent. The appellant, however, was entitled to this only as a relief from forfeiture. Having defaulted, he was in no position to refuse possession; hence the respondent is entitled to the value of the use of the property up to the time of restoration. As we are not informed whether respondent has taken possession, we do not know what, if any, allowance should be made for the use of the property since the date of trial. We are therefore unable to make final adjustment of these equities, but must remand the cause for further proceedings.

The judgment and order appealed from are reversed and the cause is remanded to the district court of Fergus county with directions to find what, if any, further allowance should be made to respondent for the use of the property in question since the date of the trial of this cause, and to deduct the amount so found from the above balance of $2,706.40, after adding thereto interest at the legal rate since the date of trial,

and thereupon to enter its judgment and decree canceling the contract in question, awarding possession of the property to respondent and providing that appellant have and recover from the respondent the sum ascertained to be due after taking the proceedings aforesaid.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Rehearing denied June 28, 1913.