HOGSED, APPELLANT, *v.* GILLETT, EXECUTOR, ET AL., RESPONDENTS.

(No. 4,391.)

(Submitted June 6, 1921. Decided June 27, 1921.)

[199 Pac. 907.]

*Real Property—Contract of Sale—Cancellation of Instruments —Rescission—Tender—Insufficiency.*

Real Property—Deed—What Does not Constitute.

1. A deed claimed to have been tendered by plaintiff vendor, in an action for the cancellation of a contract for the conveyance of land, to the vendees in which no grantor was named and which named the vendor and his wife as grantees and was executed by themselves, was not entitled to any consideration as a deed.

[60 Mont. 467.]

Same—Contract of Sale—Time—Tender of Deed—When too Late.

2. Where time was made of the essence of a contract of sale of land and the vendees under its terms could at any time tender final payment and demand a deed on or before a certain date, and did so but the vendor failed to comply, a tender made at the trial which was long after the time within which it should have been executed, came too late to deprive the vendees of the right to rescind.

Same—Imperfect Title—Rescission.

3. Under the rule that rescission lies for any breach of contract of so material and substantial a nature as would constitute a defense to an action brought by the party in default for a refusal to proceed with the contract, *held,* that where vendor could not give vendees a deed conveying a good title at any time prior to the date mentioned in a contract of sale because he had no title to convey, rescission in favor of vendees was properly decreed.

Same—Good Title—Vendor must be Able to Convey at Time Fixed in Contract.

4. While a vendor is not required to have a perfect title at the time he enters into a contract to sell the land or at all times between the date of the contract and the time conveyance is to be made, he must have title at the time of performance; otherwise rescission may be decreed.

*Appeals from District Court, Yellowstone County; Charles A. Taylor, Judge.*

Action by W. R. Hogsed against Frank H. Gillett, as executor of the estate of Joseph Spragg, deceased, and another. Judgment for defendants, and plaintiff appeals from it and from the order overruling his motion for a new trial. Affirmed.

Cause submitted on brief of Appellant.

*Messrs. Grimstad & Brown,* for Appellant.

Plaintiff submits that the tender on the part of the defendants was not good, for the reason that it was made before the last date upon which plaintiff could demand payment of the money due under the contract, and for the further reason that the offer to pay should have been made at the Belgrade State Bank, Belgrade, Montana, where the notes were payable, and for the further reason that there should have been

---

3. On right to rescind or abandon contract because of other party's default, see notes in 3 Ann. Cas. 366; 30 L. R. A. 64.

an actual tender of the money, either to the plaintiff himself or his authorized agents, or at the place where payment should have been made. None of these things were complied with by the defendants, and therefore their tender, under the law, was insufficient in order to rescind the contract. (*McCauley* v. *Leavitt,* 10 Utah, 91, 37 Pac. 164; 38 Cyc. 150, sec. 2; *Hanson* v. *Fox,* 155 Cal. 106, 132 Am. St. Rep. 72, 20 L. R. A. (n. s.) 338, 99 Pac. 489; Rev Codes, 1907, sec. 8036.)

The defendants could not rescind upon the ground that the plaintiff did not have title to the property, as under the law it makes no difference whether or not, at the time of entering into a contract of sale, the vendor has legal title to the same. The plaintiff in this action had the right to cancel the contract because of failure to make the payments due under the contract, and he could make this cancellation even though he did not have title to the property. (*Hanson* v. *Fox, supra; Joyce* v. *Shafer,* 97 Cal. 335, 32 Pac. 320; *Thomas* v. *McCue,* 19 Wash. 287, 53 Pac. 161.)

In *Allstead* v. *Nicol,* 123 Cal. 594, 56 Pac. 452, the following principle of law was laid down: "The rule has gone so far in some cases as to hold that if the vendor is able to procure and give a good title at the time of the decree, even though he could not do so at the commencement of the suit, the doctrine of the equity court will be satisfied." To the same effect is the case of *Kimball* v. *West,* 82 U. S. 377, 21 L. Ed. 96 [see, also, Rose's U. S. Notes].

MR. CHIEF COMMISSIONER POORMAN prepared the opinion for the court.

Appeals by plaintiff from a judgment entered in favor of defendants, and from the order of the court overruling the plaintiff's motion for a new trial. The cause was tried by the court, sitting without a jury.

The plaintiff asked for cancellation of a contract for the conveyance of land, and for a decree to the effect that defendants have no right, title, interest or estate in the lands,

and that they be forever enjoined from claiming any interest therein. The answer admits and denies certain allegations of the complaint; alleges violation of the contract on the part of the plaintiff, and that defendants had made certain payments; and they ask for judgment that the plaintiff return to defendants the property conveyed to plaintiff as part payment, and the money which they had paid and that the contract be rescinded. The facts appearing from the record are:

By agreement dated March 4, 1912, the plaintiff and Grace E. Hogsed agreed to convey to defendants by warranty deed, free and clear of any encumbrance, and defendants agreed to purchase of plaintiff certain lands in Yellowstone county, Montana, the consideration being $8,280. The defendants were to convey to plaintiff two certain lots in the town of Belgrade, which were to be accepted as part payment, in the sum of $5,880, the remaining purchase price to be evidenced by notes of defendants, one note for $350, payable October 26, 1914, without interest, one note for $1,000, payable on or before March 1, 1915, with interest at the rate of eight per cent per annum until paid, and one note for the sum of $1,050, payable on or before March 1, 1915, with interest at the rate of eight per cent per annum until paid. Plaintiff agreed that when the payments were made he would execute and deliver to defendants the deed to the lands. It is further provided that "time is the essence of this agreement," and, if defendants failed to comply with the covenants and conditions of the agreement, plaintiff was entitled to terminate the agreement, and defendants forfeited all previous payments made. Defendants were to pay the taxes on the land, and the contract was made to extend to and be binding upon the heirs, administrators, executors and assigns of the parties. The deed to the Belgrade lots and the notes mentioned in the agreement were all executed and delivered to the plaintiff, and defendants entered into possession of the lands. The notes put in evidence do not in all respects correspond with the notes referred to in the contract. All the notes introduced as evidence,

were dated March 1, 1912, and the $350 note, due October 26, 1914, bears interest at the rate of eight per cent, and is made payable on or before October 26, 1914. There is another $350 note introduced in evidence, due on or before March 1, 1915, which is not specifically described in the contract, but probably has reference to the money advanced by the plaintiff to the defendants, which is mentioned in the contract. The notes, however, were executed and accepted, and it is admitted by the plaintiff that defendants paid the principal of one of the $350 notes.

On October 26, 1914, defendants offered to pay the balance of the purchase price, on condition that plaintiff ''deliver a good and sufficient conveyance'' to the lands. No deed was ever tendered by plaintiff, and on November 3, 1914, plaintiff's attorneys notified defendants in writing that plaintiff was ready and willing to give them a deed as called for in the contract, at any time they made payment of the balance due, and stated that if prompt payment was not made by the defendants suit would be started to cancel the contract; and on December 28, 1914, plaintiff's attorneys again called the attention of Mr. Gillett to the fact that the notes had not been paid. On February 1, 1915, the defendants' attorney called the attention of the plaintiff to the fact that they had on October 26, 1914, offered to make payment on condition that a deed be delivered to them, as described in the contract, and that no deed had ever been delivered or tendered, and that they deemed the time which had elapsed since the said tender wholly unreasonable, and that they then withdrew the tender and rescinded the contract. On June 8, 1915, the plaintiff by his attorneys notified the defendants in writing that, by reason of their default in making the payments, the contract was canceled; that unless they made such payment on or before the 16th of June, 1915, the said contract would be absolutely terminated; and on June 21, 1915, this action was commenced.

Plaintiff testified: ''I bought the land from Sears and Dawes. I had a contract with them involving this land in

controversy. This contract is at my home at the present time, and was signed by C. J. Sears and John H. Dawes. I think the contract was dated March 1, 1912." It affirmatively appears from the record that neither C. J. Sears nor John H. Dawes ever had title to the land in question, but that the title thereto was in the government of the United States at all times until March 5, 1915, at which latter date a patent was issued for the lands to Lottie Sears. However, on January 19, 1915, C. J. Sears and Lottie Sears his wife, and John H. Dawes and Mary Dawes, his wife, executed a warranty deed to W. R. Hogsed, and on July 21, 1915, W. R. Hogsed and Grace E. Hogsed, his wife, executed a deed to Frank Koble to the land involved, or a part thereof; and, so far as this record is concerned, Koble is still the owner of this property.

Plaintiff claims that prior to February 1, 1915, he offered
**[1]** to give a deed to defendants, and that the deed so tendered was the only one ever executed by him "regarding this property." This so-called deed, which includes only a part of the land involved herein, was admitted in evidence, and bears date January 21, 1915. No grantor is named in the deed at all, but W. R. Hogsed and Grace E. Hogsed, his wife, are named as parties of the second part therein, and the deed on its face purports to convey land to the parties of the second part, and is executed by W. R. Hogsed and Grace E. Hogsed. In other words, it is an alleged deed by which nobody agrees to convey the lands in question to W. R. Hogsed and his wife, and is signed by W. R. Hogsed and Grace E. Hogsed. This instrument is not entitled to any consideration as a deed.

During the trial of the cause, plaintiff offered to execute
**[2]** a deed to the defendants for the lands in question, but the plaintiff did not at that time own the land, and the time within which the deed should have been executed under the terms of the contract had long since expired. The contract by its terms provides "that when the payments herein provided are met" the plaintiffs will execute and deliver to the defendants a good and sufficient conveyance by warranty deed of

[60 Mont. 467.]

the premises, free and clear of all encumbrance. The deferred payments are evidenced by notes containing the words ''on or before.'' The defendants had the right, under the contract, at any time to tender the final payment and demand the deed to the premises, and time was ''the essence of the contract.'' The plaintiff never did make or tender any deed to the defendants nor could he or anyone, under the facts appearing in this case, have made a deed conveying title ''free and clear'' at any time prior to March 5, 1915.

Neither the plaintiff nor his attorneys appear to have had [3] any knowledge of the condition of this title. Neither one seemed to know that Lottie Sears ever had any right, title or interest in this land, nor that Sears and Dawes did not have title to it, nor that the plaintiff had conveyed the land to Koble. This conveyance to Koble may have been intended by the plaintiff as a mortgage, but it stands in the record as a deed of absolute conveyance. The law relating to rescission is very succinctly stated by Mr. Williston, wherein, after discussing the general principles, he said: ''In truth, rescission is imposed *in invitum* by the law at the option of the injured party, and it should be, and in general is, allowed not only for repudiation or total inability, but also for any breach of contract of so material and substantial a nature as would constitute a defense to an action brought by the party in default for a refusal to proceed with the contract.'' (3 Williston on Contracts, sec. 1467, at page 2614.)

There is not any dispute of the proposition that one may [4] contract to sell land which he does not own, or that he may sell the land to a third party after he has entered into the contract, but he must be able, when the time of performance arrives, to furnish a good title. In other words, the seller is not required by law to have within himself a perfect title at all times between the date of the contract to convey and the time of conveyance, as required by the contract, but he must have that title at the time of performance, and that is the very thing the plaintiff in this action did not have.

We recommend that the judgment and order appealed from be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

*Affirmed.*

