OSCARSON ᴇᴛ ᴀʟ., Rᴇsᴘᴏɴᴅᴇɴᴛs, *v.* GRAIN GROWERS ASSOCIATION, INCORPORATED, Appellant.

(No. 6,427.)

(Submitted March 30, 1929. Decided April 23, 1929.)

[277 Pac. 14.]

*Messrs. Jones & Jones* and *Mr. Sterling M. Wood,* for Appellant, submitted an original and a reply brief; *Mr. Wood* argued the cause orally.

*Mr. W. C. Husband* and *Messrs. Divet, Shure, Frame, Murphy & Thorpe,* of the Bar of Fargo, North Dakota, for Respondents, submitted a brief; *Mr. Husband* and *Mr. Francis Murphy* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The plaintiffs brought this suit to cancel a contract relating to the sale of land entered into by the Diamond F. Ranch Company, their predecessor in interest, and the defendant, in June, 1919, unless defendant pay the amount due according to the terms of the contract. Plaintiffs set forth the contract, alleged performance on their part, that they were at all times ready, able and willing to convey the property upon receipt of the purchase price; alleged defendant's default, notwithstanding demand and notice.

Defendant answered and counterclaimed, alleged the inability of plaintiffs to comply with the contract, asserted a rescission thereof by defendant, and prayed for judgment against plaintiffs for the amounts paid upon the contract, less the reasonable value of the use of the lands during the time defendant occupied the same. Plaintiffs replied. The court, upon findings made, entered a decree for plaintiffs, from which the defendant has appealed.

The Diamond F. Ranch Company, in June, 1919, owned between twelve and thirteen thousand acres of land in Wheatland county. At that time the land was subject to two mortgages, one given to one Norton, the other to one Lyons, both mortgages to fall due June 26, 1924. On or about the 15th of June, 1919, the ranch company agreed in writing to sell to Grain Growers Association, Incorporated, hereafter called the defendant, and the defendant agreed to buy 8,331.18 acres for the sum of $308,273.04 (but the true consideration was $233,273.04). Six thousand dollars were paid at the time of the execution of the agreement, and the remainder of the purchase price was to be paid at certain times and in amounts agreed upon, with interest upon the deferred payments. Time was made of the essence of the agreement. Defendant agreed to pay at or before the day when the same might become delinquent by law, all taxes and assessments of every kind levied against the premises. The court found that shortly after the execution of the contract defendant entered into, and, up to and including the time of trial, continued in the possession of, the lands under and by virtue of the contract. On November 22, 1921, the Diamond F Ranch Company sold and conveyed the lands described in the contract to plaintiffs subject to the terms and conditions of the agreement, and defendant thereafter treated the plaintiffs as the owners of the premises. Defendant did not make any payment when due; on the contrary, it was always in arrears as to the amount and time of payment of each installment; but it paid to the Diamond F Ranch Company prior to November 21, 1921, and thereafter to plaintiffs, with their consent, various amounts of money at different times. A credit of $25,000 was allowed the defendant as of the tenth day of October, 1923, by delivery of cattle to the plaintiffs by the defendant. After the application of all payments there remained due and unpaid on the contract on March 31, 1925, the sum of $123,390.96. On that date the plaintiffs served upon the defendant a notice in writing, setting forth the sums

of money due and unpaid on the contract, notifying the defendant that if it failed to pay the amount due thereon within thirty days after the service of the notice, proceedings would be taken to cancel the contract together with all obligations thereunder. The defendant did not at any time after the receipt of the notice offer or express a desire to perform the contract in any manner.

The court found that at the time of receiving the notice and for a long time prior thereto, the defendant was not able to perform the contract and because of the great depreciation in value of the land involved was unwilling to perform it; that after the service of the notice, and during that period of time the defendant was offered and afforded a full opportunity to cure its default and to perform the contract, but it has never offered or been willing to do so, and its failure to perform or offer to perform has been due to its lack of ability or unwillingness to do so; that at the time the contract was made it was the understanding of the parties thereto that the payments to be made by the defendant would be available to the vendor for the payment of the mortgages to Norton and Lyons and at all times after the mortgages became due the amount due from the defendant was more than sufficient to pay the same; that at all times after the mortgages became due up to and inclusive of the time of the trial, the plaintiffs were ready, willing and able to pay and discharge the mortgages, or to redeem from the foreclosure thereof, and to make conveyance in the manner and form required by the contract, and otherwise to fully perform the contract concurrently with the payment of the amounts due thereunder from the defendant. The court further found that, independently of payments from the defendant, the plaintiffs were ready, willing and able to discharge the lands from the mortgages, and to redeem from the foreclosure, and to perform their part of the contract upon demand or request of the defendant, and would have done so if they had been so requested; that shortly after the Norton mortgage became

due the defendant was informed and advised by the mortgagee, and by the plaintiffs, of the intention of the mortgagee to foreclose, and the plaintiffs requested and urged defendant to complete payment under their contract; and during the pendency of the foreclosure proceedings the plaintiffs urged the defendant to cure the default if it desired to further perform under the contract; that the defendants did not at any time offer or express a desire to perform the contract, and did not give as a reason for its failure to pay the existence of the mortgages nor did it demand or request that the land be freed therefrom. That about the month of June, 1924, prior to the commencement of the foreclosure of the Norton mortgage, the defendant stated and declared to the plaintiffs that it was unable to proceed with the performance of the contract and did not desire to carry it out and would not further perform it. That in the month of May, 1925, anticipating the foreclosure of the mortgage plaintiffs and Norton entered into an agreement, based upon a valuable consideration, which provided that defendant's possession of the land under its contract should not be disturbed during the period of redemption which agreement was communicated by the plaintiffs to the defendant. Norton afterwards foreclosed the mortgage and on the 15th of June, 1925, the premises were sold under the court's decree, Norton becoming the purchaser.

It appears that after the sale Norton and Lyons with Mr. Daems, an attorney at law, called upon J. J. Donovan, the secretary, treasurer and superintendent of the defendant. In a conversation between the parties, it seems that Donovan agreed to give up the possession of the property held by his corporation to Norton and Lyons, and thereafter Norton and Lyons leased the lands to Donovan, who assigned the lease to defendant. The court found that the defendant was never disturbed in the possession of the lands, but at all times held possession under the contract, and that "the pretended surrender of possession to Norton and the acquirement of such" from Norton "under a purported lease was and is *colorable*

and was made for the purpose of making it appear that the defendant had lost such possession.'' That if defendant ever surrendered possession of the land its action in so doing was voluntary and in no way binding upon the plaintiffs. That not at any time since the default in the mortgage was the defendant willing to accept a conveyance of the land or to pay the purchase price therefor and if the plaintiffs had discharged the mortgages and had tendered a deed of conveyance of the lands free therefrom, the tender would have been unavailing; that the defendant wholly failed to restore or offer to restore the possession of the lands to the plaintiffs.

The court therefore concluded that the defendant was not entitled to rescind the contract nor to recover payments made thereon, but the plaintiffs were entitled to a decree canceling the contract and annulling the same.

1. We think the evidence sustains the findings, and the law, springing from the facts, supports the conclusions of the learned and careful trial judge. But counsel for defendant argue vigorously that judgment in favor of plaintiffs is erroneous for the reason that plaintiffs neither pleaded nor proved a cause of action for cancellation of the contract. It is said plaintiffs' complaint does not state a cause of action because it is not therein alleged that plaintiffs offered to perform the contract on their part, did not tender a deed conveying a good title before giving notice calling upon defendant to perform, and declaring forfeiture in case of defendant's failure to do so.

(a) This is an action for the cancellation—the termination —of a contract, not one for rescission, or to declare a forfeiture, or specific performance, of a contract. The distinction between an action of this character and one for rescission, was pointed out by this court in *Suburban Homes Co.* v. *North,* 50 Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2: ''Rescission requires the party seeking to rescind to restore, or offer to restore, to the other party everything of value received by the former under the contract, upon condition that the latter will do likewise. (Rev. Codes, sec. 5063 [sec. 7565, Rev. Codes,

1921] ; *Clark* v. *American Dev. & Min. Co.,* 28 Mont. 468, 72 Pac. 978; *Cotter* v. *Butte & Ruby Valley S. Co.,* 31 Mont. 129, 77 Pac. 509.) If he seeks the aid of a court of equity, he must aver that he has done this, or set forth excusatory facts. Such is not the purpose of this action. Plaintiff seeks to have the contract canceled as a menace to his title, having asserted his right under the express stipulation therein to declare it no longer binding upon him because of a breach of it by the defendant. While both actions are of equitable cognizance, they are wholly different in their scope and purpose, and the rules applicable to the one have no application to the other. (*Cook-Reynolds Co.* v. *Chipman,* 47 Mont. 289, 133 Pac. 694; *Fratt* v. *Daniels-Jones Co.,* 47 Mont. 487, 133 Pac. 700.)''

(b) The phraseology of the complaint affirms the statement foregoing that the action is not one to enforce a forfeiture, but is for the cancellation of the contract and that alone. The complaint does not seek to enforce the contract; it does not require any affirmative action by the defendant, does not seek to require the defendant to do anything; does not seek to recover anything from defendant except possession of the land upon the termination of the contract. By the very terms of the contract defendant is entitled to the deed only upon making the prescribed payments; being in default defendant has no right to demand the deed; defendant holds possession of the land by virtue of the contract which it has breached, thus casting a cloud upon plaintiffs' title; plaintiffs, not at fault, simply ask that the contract, breached by defendant's fault, be canceled, and that they be restored to possession of the land. Upon this factual condition equity does not require plaintiffs, not at fault, to render to defendant, at fault, a deed for the land before proceeding to terminate the contract. The case comes squarely within the doctrine of *Suburban Homes Co.* v. *North, Fratt* v. *Daniels-Jones Co.,* supra, and *Hammond-Dodson Co.* v. *Slattery,* 67 Mont. 489, 216 Pac. 323.

(c) From what has been said it is clear that the case is not one for specific performance and hence it is not ruled by *Milwaukee Land Co.* v. *Ruesink,* 50 Mont. 489, 148 Pac. 396, or *Boone* v. *Templeman,* 158 Cal. 290, 139 Am. St. Rep. 126, 110 Pac. 947, so strongly relied upon by able counsel for defendant.

2. At the outset of the trial this declaration was made: "Plaintiffs' theory in this case is only an action for the cancellation of the contract in the event the performance is not offered." On the merits it is said that as all the unpaid installments were due when the action was commenced the covenants of plaintiffs and defendant had become concurrent, and thus plaintiffs waived that provision of the contract making time the essence of the contract; and therefore it is argued plaintiffs were obliged to tender performance before cutting off the rights of the defendant. To this abstract proposition of law we offer no dissent. But a useless tender is not required (*Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Long* v. *Needham,* 37 Mont. 408, 96 Pac. 731; *Winslow* v. *Dundom,* 46 Mont. 71, 125 Pac. 136).

It is "the settled law of this state that when a tender is required by any obligation, and it is apparent that the tender will be refused, such tender is not necessary. All that is required in such a situation is that the party making the tender should hold himself ready, willing, and able to perform." (*Hills* v. *Mutual Oil Co.,* 65 Mont. 317, 211 Pac. 314.) The same rule applies where the party to whom otherwise the tender should be made himself refuses to go on with the contract, or is unable to perform it, and so notifies the other party.

Moreover, the equities seem to be altogether with plaintiffs. The history of the transaction is one of defaults on the part of the defendant and indulgences on part of the plaintiffs. Defendant did not at any time, after the initial payment of $6,000, make any payment at the time specified in

the contract, and always fell far short of the amount required. Defendant did not make a cash payment after August 4, 1923, and made no payment of any kind after October 10, 1923, notwithstanding that the plaintiffs were frequently urging and demanding payment, both orally and in writing.

The contract was entered into with full knowledge on part of the defendant that the lands were mortgaged. The payments provided for in the contract were timed so that they could be used by the Diamond F Ranch Company in discharging the obligations of the mortgages. In June, 1924, plaintiffs, in a conference with Donovan, defendant's managing agent, told him that upon the payment of $25,000 Mr. Norton would extend the mortgage for five years, and that unless the $25,000 was paid Mr. Norton undoubtedly would foreclose his mortgage, and as plaintiffs did not feel like putting any more money into the land they would have to cancel the contract. Donovan, according to plaintiffs' testimony, said "he didn't have the money and couldn't raise it, and he wouldn't raise it if he could; he said land values had gone down to such an extent that it was not worth what was against it, and he was going to let it go; that it was cheaper to rent land than to own it." Plaintiffs urged Donovan "to try and hang onto the land and try to make the other payments, and suggested he borrow some money on the sheep to pay it, but he said he would not do that, he would rather let it go." Mr. Oscarson, one of the plaintiffs, then wrote a letter to Mr. Goodman, the president of the company, who was at Butte, in which he told Goodman of Norton's offer, and said: "We informed Mr. Donovan of this and he intimated that you could not make that payment and would let the ranch go. * * * As it stands now I presume Mr. Norton will foreclose the mortgage and if he does that we will have to cancel your contract. I wish you would write me frankly just what you think of it and if you wish to carry it through what payments you can make. If you have decided to abandon it will you make a quit claim to obviate the necessity of a cancella-

tion?'' In answer, Mr. Goodman wrote, saying: "In view of the fact that I have not had a chance to see and talk matters over with Mr. Donovan it is impossible for me to give you any satisfactory answer. I am depending upon him to look after the business down there and of course would not be justified in making any agreement that was not first understood with him." So matters remained.

On March 31, 1925, plaintiffs served written notice on the defendant, demanding payment of the amount due and notifying defendant that in case of its failure to pay, proceedings would be taken to cancel the contract. The complaint was filed July 6, 1925.

The notice put defendant upon its guard and yet for more than ninety days it sat idly by. The language of *Hammond-Dodson Co.* v. *Slattery*, supra, is apt here: "Had defendant made any attempt to protect herself a different situation might have resulted; but she sat by and suffered the action to be commenced. Even now she does nothing more than insist that this action may not be maintained because the plaintiffs have omitted some steps which she claims must be taken before the relief may be granted."

We think, the whole case considered, that the court was amply justified in finding that defendant's failure to cure its default constituted a wilful breach of the contract and that its failure was occasioned either by its lack of ability or unwillingness to do so. In fact, we think the proof shows clearly that the defendant was unable to perform its contract.

The defendant cites section 7405, Revised Codes 1921, which reads: "Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself; and must be able and offer to fulfill all conditions concurrent so imposed upon him on the like fulfillment by the other party, except as provided by the next section." But the next section, 7406, provides: "If a party to an obligation gives notice to another, before the latter is in default, that he will not perform the

same upon his part, and does not retract such notice before the time at which performance upon his part is due, such other party is entitled to enforce the obligation without previously performing or offering to perform any conditions upon his part in favor of the former.''

In 39 Cyc. 1345, it is said: ''Although time is of the essence of the contract, a strict performance may be waived by the party entitled to insist upon it. After a waiver time ceases to be essential and does not again become material until the vendor makes it so by a proper notice insisting upon performance within some reasónable time.''

And appropriate to the situation here we quote again from *Suburban Homes Co.* v. *North,* supra: ''Where the indulgence has been extended until long after all the installments are due thereon, nonpayment alone will not justify a forfeiture. (*Boone* v. *Templeman,* supra; *McCroskey* v. *Ladd,* 96 Cal. 455, 31 Pac. 558.) But, though the vendor has extended indulgence to the vendee, he is not required to wait indefinitely for the vendee to perform his obligation. If the latter continues in default, the vendor, by demand for payment of the balance of the purchase money and notice of his purpose to terminate the contract in case of further default, may put the vendee upon his guard. If after such notice he does not make payment within a reasonable time, the vendor may declare the contract at an end.''

3. Counsel for defendant urge that the court erred in admitting in evidence the testimony relating to the conversation between plaintiffs and Donovan, asserting that Donovan's statements were not binding upon defendant, not being within the scope of his authority. We think the assignment without merit. From the beginning Goodman was president of the corporation, Donovan, secretary, treasurer and superintendent. There were seven directors, all nonresidents except Goodman and Donovan. These two men conducted the business of the corporation as if it were their private enterprise—as if they were partners. Donovan not only was os-

tensibly the general manager but the record discloses that he was actually such during the years 1923, 1924 and 1925. With respect to the operations at Harlowton, where the company had its office, and at the ranch, he was in full charge, the company's agent having general direction and active conduct of its business.

"No principle of law is more clearly settled than that an agent to whom is intrusted by a corporation the management of its local affairs, whether such agent be designated as president, general manager, or superintendent, may bind his principal by contracts which are necessary, proper, or usual to be made in the ordinary prosecution of its business [citing cases.] The fact that he occupies, by the consent of the board of directors, the position of such an agent, implies, without further proof, the authority to do anything which the corporation itself may do, so long as the act done pertains to the ordinary business of the company. [Citing cases.]" (*Trent* v. *Sherlock,* 24 Mont. 255, 61 Pac. 650; *Mayger* v. *St. Louis M. & M. Co.,* 68 Mont. 492, 219 Pac. 1102.)

Under the circumstances, Donovan's statements were within the scope of his authority; they were the declarations of an authorized agent made while in the active discharge of his official duties and are binding upon defendant. (*Callahan* v. *Chicago, B. & Q. R. Co.,* 47 Mont. 401, 47 L. R. A. (n. s.) 587, 133 Pac. 687; *Hogan* v. *Kelly,* 29 Mont. 485, 75 Pac. 81; *Raish* v. *Orchard Canal Co.,* 67 Mont. 140, 218 Pac. 655.)

4. The defendant seeks affirmative relief on the ground that it rescinded the contract because of plaintiffs' inability to perform. In addition to its contentions respecting plaintiffs' omission to tender performance, which we have considered, it insists that before this action was commenced Norton took possession of the lands and ousted defendant from possession thereof: the assertion of defendant's rescission of the contract first appears in the answer. This was long after plaintiffs' complaint was filed.

At this point it is well to remember the court's finding that prior to the mortgage foreclosure plaintiffs had entered into an agreement with Norton providing, in case of a sale upon foreclosure, that defendant's possession of the premises should not be interfered with during the period of redemption.

The court also found, as we have seen, that defendant at all times held possession under the contract, and that the surrender to Norton was colorable and was made for the purpose of making it appear that the plaintiffs had lost possession of the land and that the surrender of the land, if defendant did surrender it, was voluntary and not binding on the plaintiffs. We think this finding is justified by the evidence, but whether it is or not, it would be grossly inequitable upon the facts to sustain defendant's contention upon this ground.

It is true that, the facts warranting it, formal notice of rescission is not always a requisite to rescinding a contract, and that bringing an action promptly is generally held sufficient (*Bozdech* v. *Montana Ranches Co.*, 67 Mont. 366, 216 Pac. 319), but the action must be brought promptly. In *Hogsed* v. *Gillett*, 60 Mont. 467, 199 Pac. 907, the court quoted the following from 3 Williston on Contracts, 2614: "In truth, rescission is imposed *in invitum* by the law at the option of the injured party, and it should be, and in general is, allowed not only for repudiation or total inability, but also for any breach of contract of so material and substantial a nature as would constitute a defense to an action brought by the party in default for a refusal to proceed with the contract."

Here the defendant was not an injured party, nor was there any repudiation of the contract by plaintiffs or any inability on their part to perform it. The court found, and the evidence sustaining the finding is uncontradicted, that plaintiffs were able to pay the mortgage and to redeem the property from the sale at any time, and would have done so had defendant requested them to do so. The defendant, on the other hand, was unable to comply with the contract on its part.

It was largely because of defendant's failure that the mortgage foreclosure and the sale of the property came about. The defendant did not make a sufficient offer of restoration to the plaintiffs, nor, the circumstances considered, could it have done so. The evidence is that plaintiffs were greatly damaged by defendant's conduct.

Under all these conditions it does not lie in the mouth of defendant to excuse itself from its defaults by blaming plaintiffs for the foreclosure sale and what followed. Upon the equities the plaintiffs are entitled to prevail.

We have carefully examined all the assignments of error and are satisfied that the judgment should be affirmed, and it is so ordered.

ASSOCIATE JUSTICES MATTHEWS, GALEN, FORD and ANGSTMAN concur.

Rehearing denied May 13, 1929.