MAYGER, Admx., Respondent, *v.* ST. LOUIS MINING & MILLING CO., Appellant.

(No. 5,192.)

(Submitted September 17, 1923. Decided October 23, 1923.)

[219 Pac. 1102.].

*Accounts Stated — Corporations — Powers of President — Directors as Creditors — Presumptions — Pleadings — Amendment During Trial—Discretion.*

Account Stated—In Effect a Contract—General Denial—Burden of Proof.
 1. An agreement resulting in an account stated has the force of a contract, and plaintiff in an action to recover thereon must recover on the contract or fail, and in order for defendant to prevail under a general denial, he must show that there was not any account stated or that the amount claimed to be due was paid.
Same—Answer—Failure to Allege Fraud or Mistake—Proof not Admissible.
 2. In the absence of allegation of fraud, error or mistake in reaching the agreement resulting in an alleged account stated, inquiry into the items making it up or into the *bona fides* of the transaction is not permissible.
Corporations—Powers of President.
 3. The president of a corporation has the power to bind it in regard to contracts involved in its every-day business, or in

3. Authority of officer to represent corporation as inferred from manner in which he has been permitted to act, see note in Ann. Cas. 1913D, 646.
 Presumption that contract with corporation is within authority of president, see notes in Ann. Cas. 1917A, 360; 7 L. R. A. (n. s.) 376.

[68 Mont. 492.]

matters, within the powers of the corporation, with respect to which, with the knowledge of its directors, it has by usage and practice permitted a course of business to grow up in the conduct of its affairs showing implied power in him to bind it.

Account Stated—Death of President—Power of Vice-president to Bind Corporation.

4. Under the above rule (par. 3), *held,* that where for years the president of a mining corporation as acting manager had transacted its business without regard to the board of directors, *inter alia* compromising and settling claims against the company, managing its business generally, *etc.,* and after his death the same course of business was pursued by the vice-president, the latter did not exceed his powers in assenting to an account stated presented for approval by the administratrix of the estate of her intestate, the deceased president, showing a balance due him at the time of his death.

Corporations—Indebtedness Due Director—Bad Faith—Presumptions.

5. There is no presumption that a director dealing with his corporation does so in bad faith unless he gains an advantage thereby, and if the company is indebted to him on a *bona fide* claim he may enforce it by the same method open to any other of its creditors.

Pleadings—Amendment of Answer After Close of Plaintiff's Case—Refusal—When not Abuse of Discretion.

6. Where, in an action against a corporation on an account stated, the answer consisting of a general denial was not filed until nearly two years after a copy of the complaint had been served, trial being had about a year later, denial of a motion for leave to file an amended complaint made after the close of plaintiff's case, alleging error and mistake in assenting to the account, fraud in making the book entries upon which it was based and in general surcharging the account, thus entirely changing the issues, was not an abuse of discretion.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

ACTION by Frances Mayger, as administratrix of the estate of William Mayger, deceased, against the St. Louis Mining & Milling Company of Montana. Judgment for plaintiff and defendant appeals. Affirmed.

*Messrs. McIntire & Murphy,* and *Messrs. Walsh, Scallon & Wine,* for Appellant, submitted a brief and one in reply to

---

4. Power of president to bind corporation in account stated, see note in 2 A. L. R. 77.

that of Respondent; *Mr. William Scallon* argued the cause orally.

A director of the company is in a position analogous to that of a trustee and is subject to the same rules. (*Coombs* v. *Barker*, 31 Mont. 526, 79 Pac. 1; *Barker* v. *Montana etc. Mining Co.*, 35 Mont. 351, 89 Pac. 66; *Gerry* v. *Bismarck Bank*, 19 Mont. 191, 47 Pac. 810.) In *McConnell* v. *Combination Mining & Milling Co.*, 30 Mont. 239, 104 Am. St. Rep. 703, 76 Pac. 194; *Id.*, 31 Mont. 563, 79 Pac. 248, it is held expressly that the provisions of section 2970 of the Civil Code of 1895, now section 7888, Revised Codes of 1921, applies to directors. (See, also, *McConnell* v. *Combination etc Co.*, 31 Mont. 563, at page 567, 79 Pac. 248.) The plaintiff was herself interested in the estate as one of the heirs, in addition to being administratrix. She was one of the heirs at law. Therefore, she had a double interest in the claim—as administratrix and as an heir. Her interest as administratrix itself included a personal interest because she would get fees on it. Being a trustee in fact of the defendant, she was subject to all the rules applicable to a trustee. She could not act in two conflicting capacities. She could not act for or represent two conflicting interests. Indeed, she could not act at all in such a transaction while a trustee of defendant. (*Pearson* v. *Concord R. R. Corp.*, 62 N. H. 537, 13 Am. St. Rep. 590, and note; 1 Perry on Trusts and Trustees, 6th ed., sec. 207; *Goodin* v. *Cincinnati etc. Canal Co.*, 18 Ohio St. 169, 98 Am. Dec. 95; *Billings* v. *Shaw*, 209 N. Y. 265, 103 N. E. 142; *First Nat. Bank of Davenport* v. *Gifford*, 47 Iowa, 575; *Davis* v. *Rock Creek etc. Co.*, 55 Cal. 360, 36 Am. Rep. 40; *Smith* v. *Pacific etc. Works*, 145 Cal. 352, 104 Am. St. Rep. 42, 78 Pac. 550, 552; *Simms* v. *Petaluma Gas Light Co.*, 131 Cal. 656, 63 Pac. 1011.)

The burden is upon her to show that the transaction was fair in all respects; that it had been duly and properly authorized; that the defendant was fully informed and acted with full knowledge of all the circumstances. (*Hanson Sheep*

*Co.* v. *Farmers & Traders' State Bank,* 53 Mont. 324, 163 Pac. 1151; 14A Corpus Juris, "Corporations," sec. 1888, p. 120.)

Knowledge on the part of the defendant in such a case, and proper action on the part of the defendant, means, of course and necessarily, the board of directors. Knowledge by individual officers would not do, or action by individual officers would not do, since the power was in the board only, acting as a board.

The president of a corporation could not, without special authority, act for the company or bind it except in the course of his *usual duties.* (*Potts* v. *Wallace,* 146 U. S. 689, 36 L. Ed. 1135, 13 Sup. Ct. Rep. 196 [see, also, Rose's U. S. Notes]; *Robins Min. Co.* v. *Murdock,* 69 Kan. 596, 77 Pac. 596; *Wilson* v. *Investment Co.,* 80 Or. 233, 156 Pac. 249.)

An officer of a corporation who does not possess the power to create a debt against the corporation directly cannot do it indirectly, by settling an account which shows a balance due to the person to whom it is sent. (*Harvey* v. *West Side El. Ry. Co.,* 13 Hun (N. Y.), 392.)

*Mr. T. B. Weir,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Plaintiff, as administratrix of the estate of William Mayger, deceased, brought this action to recover from the defendant the sum of $19,639.50, balance alleged to be due upon an account stated, with interest. Judgment in her favor resulted, from which defendant appeals.

The action is upon an account stated. Defendant alleges that the complaint does not state a cause of action. In this it is wrong. (See *McFarland* v. *Cutter,* 1 Mont. 383; *Voight* v. *Brooks,* 19 Mont. 374, 48 Pac. 549; *Martin* v. *Heinze,* 31 Mont. 68, 77 Pac. 427; and *Noyes, Admx.,* v. *Young,* 32 Mont. 226, 79 Pac. 1063.) The answer is a general denial.

The agreement resulting in the account stated having the
[1]   force of a contract the plaintiff must recover upon it, or
fail in the action.  Upon its answer, the defendant, in order
to prevail must show that there was not any account stated,
or that it has paid the amount alleged to be due.  Further the
defendant may not go in the absence of a pleading alleging
fraud, error or mistake in the ascertainment of the balance,
or in reaching the agreement resulting in the account stated.
(*Martin* v. *Heinze, supra*, and cases cited.)

The administrative capacity of plaintiff was admitted, also
the corporate capacity of defendant, and that the defendant,
during all the times in controversy, was the owner of large
mining properties and mills for the reduction of ores in Lewis
and Clark county.

The evidence showed, or tended to show, the following facts
without substantial contradiction: The plaintiff, Frances May-
ger, had been secretary and director of the defendant company
ever since September 25, 1913.  Her husband, William Mayger,
had been connected with the company for many years, was
elected president on September 25, 1913, and held that office
continuously thereafter until the date of his death, January
19, 1918.  For a number of years Charles F. Mayger had been
vice-president of the company and was such when William
Mayger died.  On April 13, 1918, he was vice-president and
acting manager of the company.

At a meeting of the stockholders held July 8, 1887, at which
William Mayger was president, by-laws were adopted.  Article
II, thereof, so far as material here, reads as follows:

"Section 1.  The president shall be the chief executive officer
of the company in the management of its affairs, but subject
to the control and direction of the board of trustees.  He shall,
when present, preside at all meetings of the board of trustees,
and of the executive committee, and shall report his official
acts to the board at regular meetings for approval, and shall
perform such other duties as may be required of him by the
laws of Montana and by the by-laws of this company and by

the board of trustees. He shall sign all documents, ·deeds, contracts, certificates of stock, drafts, acceptances, notes and checks, and approve all vouchers for the payment of money as may be necessary in the principal office of the company. He shall be *ex-officio* a member of all committees, but shall not vote on matters involving his own acts.

"Sec. 2. He shall receive such salary as the board of trustees may fix and allow. * * * "

By Article III it was provided that in case of the president's inability or refusal to act, "the vice-president shall possess all the powers and perform all the duties of the president, and may receive such compensation for his services as the board of trustees may fix and allow."

During the period inquired about in this controversy, covering a number of years, the president transacted the business of the company without respect to the board of directors, "to the fullest extent." As acting manager and head of the company he made its contracts for supplies, employed the miners, directed them where to work, made contracts with reference to improvements that were done on the mine, com-. promised and settled claims against the company on behalf of the company, managed the business of the company when the board of directors was not meeting. This course of conduct by the president had existed during his connection with the company, and seemingly the same course was pursued after the president's death by the acting president.

On April 13, 1918, there was an open account existing between the plaintiff in her capacity as administratrix of the estate of William Mayger, deceased, and the defendant as a result of the relationship which had existed between William Mayger and the company. Plaintiff had caused an audit of the company's books to be made, of which Charles F. Mayger, the vice-president and acting president, had knowledge. He had seen the audit. On April 13, plaintiff presented to him two papers, duplicates, which he signed as vice-president and

which she attested as secretary and upon which she placed the corporate seal. The one in evidence reads as follows:

"Helena, Montana, April 13, 1918.

"St. Louis Mining & Milling Company to Frances Mayger, Administratrix of the Estate of William Mayger, Deceased.

"To balance due William Mayger on account as shown by the books of the St. Louis Mining & Milling Company, $19,639.59.

"Approved:

"ST. LOUIS MINING & MILLING COMPANY,

"By CHAS. F. MAYGER, Vice-President.

"Attest: FRANCES MAYGER, Secretary.

"[Corporate Seal.]"

Plaintiff retained one paper; some time later, probably four or six weeks afterward, she gave the other one to Charles F. Mayger. Plaintiff made demand on the company for payment of the amount due, but no payment was ever made thereon. Strenuous objection was made to the admission in evidence of the foregoing document, which we shall refer to as Exhibit "A." In fact, its admission is the main error assigned.

Counsel insist that the president of a corporation as such [2-4] has no inherent power to bind it by assenting to an account stated, and they say that, since plaintiff was a director and officer of the defendant company when Exhibit "A" was executed it discloses upon its face its own illegality, and before plaintiff can recover she must show the transaction to have been fair in all respects, and that the defendant, in acting with respect to it did so with full knowledge of all the circumstances.

Here it may be observed that defendant's counsel have taken a wide range in their brief, carrying their contentions beyond the issues made up by the pleadings. It is unnecessary to refer to these contentions further than to reiterate that in the absence of a pleading on behalf of the defendant alleging fraud, error or mistake, it is not permissible to inquire into

the items which made up the account stated, nor into the *bona fides* of the transaction.

This court never followed the ancient rule that the president of a corporation has no greater power than any other director. On the contrary, long ago it adopted the more modern, and what Mr. Fletcher (3 Fletcher's Cyclopedia Private Corporations, sec. 2011) calls "the sensible rule, in accordance with the well-recognized ideas of the people at large, that a president of a corporation is the head of the corporation subject to the control of the board of directors as to matters out of the ordinary, but with power to bind the corporation in regard to contracts involved in the every-day business of the corporation."

In *Trent* v. *Sherlock*, 24 Mont. 255, 61 Pac. 650, Mr. Chief Justice Brantly said: "No principle of law is more clearly settled than that an agent to whom is intrusted by a corporation the management of its local affairs, whether such agent be designated as president, general manager, or superintendent, may bind his principal by contracts which are necessary, proper, or usual to be made in the ordinary prosecution of its business [citing cases]. The fact that he occupies, by the consent of the board of directors, the position of such an agent, implies, without further proof, the authority to do anything which the corporation itself may do, so long as the act done pertains to the ordinary business of the company. (*Mathias* v. *White Sulphur Springs Assn.*, 19 Mont. 359, 48 Pac. 624; *Ceeder* v. *Lumber Co.*, 86 Mich. 541, 49 N. W. 575; *Adams Mining Co.* v. *Senter*, 26 Mich. 76; *Marlatt* v. *Levee Steam Cotton Press Co.*, 10 La. 583; *Siebe* v. *J. Hendy Machine Works*, 86 Cal. 391, 25 Pac. 14.) Even where the contract in question pertains to matters without the ordinary course of business, but within the power of the corporation—that is, such as is not prohibited by its charter or by express provision of law—the authority of the agent may be established by proof of the 'course of business between the parties themselves; by the usages and practice which the company may have permitted

to grow up in its business; and by the knowledge which the board, charged with the duty of controlling and conducting the transactions and property of the corporation, had, or must be presumed to have had, of the acts and doings of its subordinates in and about the affairs of the corporation.' (*Mahoney Mining Co.* v. *Anglo-Californian Bank*, 104 U. S. 192, 26 L. Ed. 707; see, also, *Martin* v. *Webb*, 110 U. S. 7, 28 L. Ed. 49, 3 Sup.. Ct. Rep. 428 [see, also, Rose's U. S. Notes]; *Sparks* v. *Transfer Co.*, 104 Mo. 531, 12 L. R. A. 714, 15 S. W. 417.)" And see *Edwards* v. *Plains Light & Power Co.*, 49 Mont. 535, 143 Pac. 962.)

Upon the evidence narrated above and upon the foregoing authorities, *prima facie* at least Charles F. Mayger, vice-president and acting president, when he executed Exhibit "A," did not exceed the powers which the company had for so long confided to the office of president.

The instrument is fair upon its face. It does not warrant the inference of illegality because signed by the plaintiff as secretary of the company. The mere fact that the plaintiff as secretary attested the document and placed thereon the company's seal did not invalidate it. Her signature as secretary was not necessary to give the instrument validity, if the acting head of the company was authorized to execute it, and this he was, *prima facie* at least. The fact that she was administratrix of the estate of William Mayger, deceased, must not be overlooked. The law imposed upon her the duty of collecting all debts due to the decedent or to his estate. (Sec. 10257, Rev. Codes 1921.) She was chargeable with the decedent's estate coming into her hands (sec. 10282) and would be held accountable for debts due the decedent uncollected through her fault (sec. 10284). If she neglected the estate, or neglected to perform her duties properly, she became subject to suspension, and even to having her letters revoked (secs. 10124, 10125, Rev. Codes 1921). So acting as she was, under the watchful eye of the court, she would have been held to a strict accountability if by reason of any negligence on her part a valid

account belonging to the estate had been lost.  As administratrix she presented the document now known as Exhibit "A" to the head of the corporation who was charged with knowledge of the condition of the books, who knew there were unadjusted accounts between the estate of William Mayger, deceased, and the corporation, and who must be presumed to have acted understandingly in the matter.

To overcome plaintiff's case, defendant's counsel seem to [5] take the position that, as plaintiff was a director and officer of the company when as administratrix she dealt with the company, a presumption of bad faith on her part attaches. This is based upon the principle that a director, a trustee, occupying a fiduciary relation to the stockholders as he does, may not enrich himself at their expense.  He bears the obligation of serving his trust with fidelity and is forbidden to do any act by which the assets of the corporation are diverted from their proper channels.  And when a director "has been dealing with the corporation, the burden is at once upon him to show that his dealings have been fair and honest."  Such is the language of this court in *Hanson Sheep Co.* v. *Farmers & Traders' State Bank,* 53 Mont. 324, 163 Pac. 1151, citing *Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810; *McConnell* v. *Combination M. & M. Co.,* 31 Mont. 563, 79 Pac. 248; *Coombs* v. *Barker,* 31 Mont. 526, 79 Pac. 1; *Kleinschmidt* v. *American Mining Co.,* 49 Mont. 7, 139 Pac. 785.  But this does not carry the implication that one may not demand payment of an honest debt due him from a corporation of which he is a director.  Nor is there any implication that one who deals with a corporation of which he is a director deals in bad faith,—unless he gains an advantage thereby.  We are mindful of the rules declared by sections 7888 and 7889, Revised Codes of 1921, wherein it is laid down that "a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind," and that a trustee "may not use or deal with the

trust company for his own benefit." There is nothing in the record to indicate that there was the slightest misrepresentation, concealment, threat or adverse pressure on the part of the plaintiff; neither any dealing with trust property for her own benefit. As administratrix she was simply a creditor of the corporation. If it be assumed, as it must be here, that the debt was *bona fide*, she, as a creditor of the corporation, was entitled to enforce her claim by the same method as might any other creditor. (*Coombs* v. *Barker, supra; Tatem* v. *Eglanol Min. Co.*, 42 Mont. 475, 113 Pac. 295.)

The provisions of section 7895, Revised Codes of 1921, that "all transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence," are not applicable to the instant case. The transaction here, so far as the record discloses, is of no greater moment than if the plaintiff had obtained from the president as acting head of the company a voucher directing payment of a just debt owing by the corporation to plaintiff's decedent. There is not the slightest evidence that in obtaining the written instrument plaintiff gained any advantage over the corporation, or obtained from it anything which in good conscience she should not have obtained. Although she was an heir of William Mayger, she was also administratrix acting under the direction of the law. Certain other presumptions apply to the conditions apparent here. The law presumes that private transactions have been fair and regular. (Sec. 10606, subd. 19, Rev. Codes 1921.) As the record does not contain any evidence of fraud on plaintiff's part we will not assume that she acted with any fraudulent intent. (*Floyd-Jones* v. *Anderson*, 30 Mont. 351, 76 Pac. 751.) The law presumes that there was a good and sufficient consideration for the written contract. (Sec. 10606, subd. 39, Rev. Codes 1921.)

[68 Mont. 492.]

The defendant failed to introduce any substantial evidence [6] to combat the showing made by the plaintiff. On the contrary, apparently fearing their inability to defeat the plaintiff's case upon the answer, defendant's counsel sought permission to file an amended answer, in which they undertook to set up error and mistake made by Charles Mayger in signing the instrument, fraud perpetrated in making entries in the book upon which the account stated was based, and in general to surcharge the account. The court denied the motion. Its reasons for so doing are so cogent we quote them in part: "The complaint in this case was filed on the twenty-ninth day of June, 1918. It appears that it was not served until the twenty-fourth day of May, 1919. The complaint sets up the fact, or alleged fact, of an accounting, and of a balance claimed to be due to plaintiff. The answer was not filed until February 14, 1921—nearly two years after service of the complaint, stating these facts or alleged facts. To change the issue after this time, after plaintiff has given her testimony and closed her case would simply mean a retrial of the whole issue. I do not know of any reason why the defendant could not in this time have investigated these books and found out something about it. There is a statement made there, there was an account, giving the date. Well, they knew who the directors were; they knew the books; they knew whether there was this amount due plaintiff. * * * To wait now until plaintiff has introduced her case and closed, and then introduce this other issue of fraud or mistake, would, it seems to me, be doing an injustice to this plaintiff. * * * It was an easy matter for the company to find out whether the directors or any of them acted upon it; it could certainly have been found out between the filing of the complaint and the filing of the answer, what the books show, as to the statement of account. The application of the defendant to file amended answer is denied."

The court did not abuse its discretion in denying the application to amend. (*Marcellus* v. *Wright,* 65 Mont. 580, 212

Pac. 299; *Cullen* v. *Western Mortgage & Warranty Title Co.,* 47 Mont. 513, 134 Pac. 302.)

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.